UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ERNEST C. WASHINGTON,   | ) | No. CV 08-08535-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. On August 11, 2009, Plaintiff filed a Motion for Summary Judgment, Memorandum of Points and Authorities and Statement of Uncontroverted Facts and Conclusions of Law in support of the Motion for Summary Judgment ("MSJ"). The Commissioner's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary

Judgment were filed on September 1, 2009 ("Opposition"). Plaintiff has not filed a Reply. The Commissioner has filed the certified Administrative Record ("AR"). The matter is now ready for adjudication.

In his Statement of Genuine Issues to Motion for Summary Judgment, Plaintiff asserts that he has the following severe impairments:[1]

1. Diabetes mellitus Type I (uncontrolled);
2. Diabetic neurothopy [sic];
3. Peripheral artery disease;
4. Discoid lupus;
5. Meningitis;
6. Depression; and
7. Insomnia.

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ DID NOT ERR IN FINDING THAT**

**PLAINTIFF DID NOT HAVE A SEVERE IMPAIRMENT**

In a comprehensive 14-page decision, the ALJ determined that

---

[1] In view of the fact that the Administrative Law Judge ("ALJ"), in his decision (AR 11-24), found that Plaintiff does not have any severe impairments (see 20 C.F.R. §§404.1521, 416.921 (2009)), the Court views Plaintiff's MSJ as attacking the ALJ's decision at Step Two of the sequential evaluation process (see 20 C.F.R. §§404.1520(a), 416.920(a)), that he does not have a severe impairment.

2

1  Plaintiff has medically determinable impairments of insulin dependent
2  diabetes mellitus with sometimes poor control; hypertension;
3  hypercholesterolemia; bilateral renal cysts; and adjust order,
4  depressed. (AR 14.)  The ALJ found, however, that Plaintiff does not
5  have any severe impairments. (AR 15.)
6       This decision reflects the ALJ's thorough consideration of the
7  evidence and resolution of any conflicts in the medical testimony.
8  See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  Indeed,
9  each of the impairments identified by the ALJ at Step Two of the
10 sequential evaluation process, but found to be not severe, is
11 discussed exhaustively in the decision, with references to the medical
12 evidence.  Indeed, Plaintiff had claimed additional impairments at the
13 administrative level, which are also discussed by the ALJ.  Thus, he
14 claimed a back impairment; however, as the ALJ noted, consultative
15 clinical examinations ("CE"), including examinations of Plaintiff's
16 back, had been unremarkable. (See AR at 14, citing exhibits.)  No
17 neurological deficit had been noted during these examinations. (Id.)
18 Next, the ALJ noted that Plaintiff had alleged symptoms in his lower
19 extremities, such as pain, swelling, and numbness, but the ALJ noted
20 that a bilateral arterial duplex examination of his lower extremities
21 with color Doppler imaging performed in October 2006 was negative, and
22 that the evidence does not substantiate any diabetic neuropathy or any
23 end-organ damage related to diabetes mellitus. (See AR at 14, citing
24 exhibits.)
25      Plaintiff had claimed that he had bad or blurry vision not
26 treatable with corrective lenses, but the ALJ noted that there was no
27 substantiation by any diagnostic or reliable clinical findings, and
28 that Plaintiff reports that he continues to have a valid driver's

license. (AR 15, citing exhibits.) Plaintiff's allegation that had lupus was, as the ALJ again noted, completely unsupported by any diagnostic or reliable clinical findings which would substantiate such a condition as medically determinable. Plaintiff has not seen a rheumatologist, and takes no medications for lupus. (AR 15, citing exhibits.) At this point, it should be noted that Plaintiff's lack of treatment, or at best, very conservative treatment for certain conditions, is highly relevant, since Plaintiff did have medical insurance and access to health care, as the ALJ noted. (AR 18, 62, 135, 240-257, 295-320, 346-378, 406-423.)

Plaintiff's allegation that he has heart disease and has had a heart attack is totally contradicted, as the ALJ noted, by the fact that a workup of Plaintiff's heart in July 2006 was unremarkable. Plaintiff testified he has rarely seen a cardiologist and only takes aspirin, assertedly for a heart condition. There are no diagnostic studies or any reliable clinical findings which would substantiate Plaintiff's allegations in this regard. (See AR at 15, citing exhibits.)

The ALJ noted that there is no evidence in the record of any neurological deficits, and that the Plaintiff's claim file has no evidence which would substantiate headaches as a medically determinable impairment. (Id., citing exhibits.)

With regard to mental issues, the ALJ noted that at one point, Plaintiff alleged that he heard voices in his head at night, but denied having hallucinations at a CE in 2006, and never reported such symptoms to Pasadena Mental Health Center, where he was at one time being treated. At a psychological CE conducted in October 2007, the ALJ noted that Plaintiff again reported hearing voices, but the claim

4

file has no evidence from any contemporaneous treating source which would substantiate such allegations. (Id., citing exhibits.)

Thus, the presence of impairments was largely substantiated by Plaintiff's own descriptions and complaints. For that reason, the ALJ undertook a careful examination of Plaintiff's credibility, finding it severely lacking.

A brief discussion of applicable law as to credibility assessment is merited.

The weight to be given to a claimant's statements concerning symptomology are governed by clear procedural requirements and applicable regulations and case law. 20 C.F.R. §404.1529 is entitled, "How we evaluate symptoms, including pain." In subsection "a", the regulation provides that, "In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." The regulation describes objective medical evidence as consisting of "medical signs and laboratory findings." The definition of "other evidence" is contained in 20 C.F.R. §§404.1512(b)(2) through (6) and 404.1513(b)(1), (4), and (5), and (d). As stated in §404.1529(a),

> "These include statements or reports from you, your treating or non-treating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any evidence showing how your impairment(s) and any related symptoms affect your ability to work."

The regulation also indicates that a claimant's statements about

symptoms, including pain, will be considered, but, importantly, notes that,

> "However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence ... would lead to a conclusion that you are disabled."

In 20 C.F.R. §404.1529(c)(3), it is specifically provided that the claimant's statements about symptoms will be considered. Relevant factors to be considered are enumerated, and include the following: daily activities [referred to in this Memorandum Opinion as activities of daily living, or ADL], location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness and side effects of any medications; treatment other than medication which has been received; and any other measures used to relieve pain and other symptoms."

Evaluation of symptoms is also guided by Social Security Ruling ("SSR") 96-7p. In what is often described as a two-step analysis, the first step consists of a determination of whether there is an underlying medically determinable physical or mental impairment which could reasonably be expected to produce the individual's pain or other symptoms. The second step involves an evaluation of the extent to which these symptoms limit an individual's ability to do basic work activities. See also Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)(en banc). Where the first step has been met, it is the

Commissioner's burden to articulate clear and convincing reasons to reject the claimant's testimony regarding subjective symptoms. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)(citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). Otherwise, the Commissioner must articulate at least specific and legitimate reasons to reject subjective symptom testimony. See Bunnell, 947 F.2d at 347.

If there is affirmative demonstrating that a claimant is malingering, then the Commissioner's reasons for rejecting claimant's testimony need not be "clear and convincing." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

Indeed, in this case, the ALJ noted substantial evidence of malingering based on the medical records. For example, in a psychological CE conducted by Dr. Donahue, she found that Plaintiff was "exceptionally disingenuous and putting forth a very poor effort." (AR 20, 323-331.) As Dr. Donahue noted, testing which she administered did suggest malingering. (AR 19, 326.)

In making the credibility determination, the ALJ noted many inconsistencies in Plaintiff's testimony. First, he indicated that he did not consider an Exertional Daily Activities Questionnaire dated December 14, 2003, because it was part of the claim file from Plaintiff's prior application, which was not being reopened. (AR 16.) The ALJ noted Plaintiff's allegations of his inability to work due to burning in his feet, pain in his toes, blurry vision, headaches, and his entire body hurting all the time. He noted a Function Report - Adult, in which Plaintiff alleges that he was awake for most of the night because he could not sleep, had stabbing pains in his feet, could not perform house or yard work due to lack of energy, that his body always hurt, that sunlight made him dizzy and nauseous, that he

had difficulty lifting, squatting, bending, standing, reaching, walking, kneeling, talking, stair climbing, memory, completing tasks, concentration, following instructions, and getting along with others, and that his ability to ambulate was just in his house, such as from his bedroom to his bathroom, and that he had a short attention span. (AR 15, citing exhibit.)  He noted Plaintiff's allegations of his inability due to exhaustion resulting from uncontrolled diabetes mellitus and lupus in addition to other factors. (Id.)  He noted Plaintiff's claims that his condition had deteriorated. (Id.)  He noted Plaintiff's claims that he had to take two to three naps a day, and was simply exhausted. (AR 17, citing exhibit.)  He noted Plaintiff's continuing complaints of pain and burning in his legs and feet, that his wrists and ankles were more swollen, that his diabetes mellitus was out of control, that he began experiencing shortness of breath, fatigue, and chest pain, and that simple ADL such as showering and getting dressed had become very difficult because of constant pain and fatigue.  Plaintiff asserted his mother did practically everything for him with regard to ADL and he stayed in bed most of the day because of pain and could not be on his feet for more than five minutes because they would start to burn. (Id., citing exhibits.)  The ALJ noted Plaintiff's testimony at the hearing that he was unable to work due to extreme fatigue or feeling tired all the time, pain in his ankles and toes, swollen feet, low back pain, inability to sleep at night, and difficulty concentrating. (Id.)

     The ALJ found, at the First Step of the Bunnell analysis, that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms.  At Step Two, however, he found that Plaintiff is not credible with regard to the

intensity, persistence, and limiting effects of these symptoms. He cited numerous reasons. First, he noted that the objective medical evidence does not substantiate disability. Thus, as reflected in the ALJ's exhaustive discussion of the medical record, he noted that many of the subjective complaints asserted by Plaintiff are simply related to medically determinable impairments. This includes his assertion of a back impairment or cardiovascular impairment. He noted that Plaintiff had an essentially normal examination with the CE internist in May of 2006, Dr. Siciarz-Lambert. (AR 17, citing exhibit.) The ALJ noted also an unremarkable CE examination from internist/rheumatologist Dr. Srinivasan in late September 2007. (AR 18, citing exhibit.) The ALJ reviewed Dr. Srinivasan's report, concluding that it contains no diagnostic or reliable clinical findings which would substantiate any end-organ damage due to hypertension, hypercholesterolemia, or diabetes mellitus. Plaintiff's renal cysts are being treating conservatively. (Id.) The ALJ noted that as to Plaintiff's primary treating physician, Dr. Galfaian, the progress notes are cursory and contain very few clinical details as would be expected for an individual of Plaintiff's young age with such alleged extreme symptoms and limitations. (Id., citing exhibits.)

Concerning Plaintiff's asserted mental impairment, the ALJ noted a mental status consulting psychiatric examination, which did not substantiate any severe mental impairment. (Id., citing exhibit.) Similarly, the ALJ noted that Dr. Donahue's psychological CE does not substantiate a severe mental impairment due to poor effort and malingering. (Id., citing exhibit.)

The ALJ further cited the fact that while Plaintiff reported that he needed a cane to walk outside his home, he did not appear at two

recent consultative examinations with a cane. (AR 18-19, 325, 332-333.)  There was no record of any support for use or prescription of a cane. (AR 19.)

In support of his MSJ, Plaintiff has submitted Exhibits A and B. This is considered new evidence, but is only considered material if it bears directly and substantially on the decision in this case.  See Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985).  The Court determines that while the evidence is new, it is at best cumulative, and does not change the outcome of this case.

Not covered by the Commissioner in his Opposition is the ALJ's discussion of Plaintiff's claim of alleged side effects from his medications, which Plaintiff made both in written submissions and at the hearing. (AR 19, citing exhibits.)  The ALJ noted that medical records from treating sources do not substantiate such allegations. While side effects of medications are a specific and relevant factor in credibility assessment (see 20 C.F.R. §404.1529(c)(3)(iv)), the ALJ noted that there is simply no medical evidence to support the existence of side effects of medication, especially including any complaints Plaintiff made to treating or examining sources regarding such matters.

The ALJ also considered the third party report from Plaintiff's mother. (AR 20, citing exhibit.)  Plaintiff's mother indicated that Plaintiff spent an average day at the time reading, listening to music, and sitting on the patio outside his room.  He helped take care of his son, made lunches, did small amounts of laundry, and helped his son with some of his homework.  Plaintiff had no problem with his own personal care, was able to handle his own money, and, according to his mother, did not need to use any assistive devices, such as a cane. (AR

20-21, citing exhibits.)  Certainly, this third party report, also relied upon by the ALJ, contradicts Plaintiff's extreme claims of limitations with regard to these very matters.

Thus, the Court finds that the credibility assessment made by the ALJ in this case was "textbook correct."  Moreover, in his MSJ, Plaintiff simply recites what he believes to be the nature and extent of his severe impairments, but does not controvert any of the recitation of evidence, or the findings made by the ALJ concerning that evidence, in his Decision.

Based upon the foregoing, the Court concludes that the ALJ did not err in finding that Plaintiff has no severe impairments. Consequently, the decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: September 30, 2009              /s/
                                        VICTOR B. KENTON
                                        UNITED STATES MAGISTRATE JUDGE

11